IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| JOEL IACOPELLI, | ) | Civil Action No.: 9:16-cv-287-PMD-BM |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -vs- | ) | |
| | ) | |
| THE TOWN OF PORT ROYAL, SOUTH | ) | |
| CAROLINA, ROBERT BILYARD, | ) | |
| Individually and in his Official Capacity, | ) | |
| JOHN GRIFFITH, Individually and in his | ) | |
| Official Capacity, HOPE HAVEN OF | ) | |
| THE LOWCOUNTRY, INC., a South | ) | |
| Carolina, non-profit Corporation., | ) | |
| BEAUFORT COUNTY DEPT OF | ) | |
| SOCIAL SERVICES, an agency of the | ) | |
| State of South Carolina, LATASHA | ) | |
| WILLIAMS, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

---

**AMENDED COMPLAINT**

---

The Plaintiff, Complaining of the Defendants would respectfully show unto this Honorable Court, and allege as follows:

### *IDENTIFICATION OF DEFENDANTS -VENUE & JURISDICTION*

1.      That, the Plaintiff is a citizen and resident of the County of Beaufort, State of South

1

Carolina, and a citizen of the United States of America, and at all times complained of herein was subject to the jurisdiction of the United States of America.

2.    That, all acts and omissions complained of occurred within the County of Beaufort, State of Couth Carolina, and wholly within the jurisdiction of the United States of America.

3.    That, the Defendant, TOWN OF PORT ROYAL, its officers, staff and/or employees constitute a political subdivision of the State of South Carolina as defined in the South Carolina Tort Claims Act, Section 15-78-10 *et seq.*

4.    That, at all times as alleged herein, the Defendant TOWN OF PORT ROYAL employed sworn police officers acting under the color of state law (South Carolina) and were acting within the course and scope of employment as sworn police officers and all such actions, inactions and/or omissions occurred in the County of Beaufort, South Carolina.

5.    That, at all times as alleged herein, the Defendant ROBERT BILYARD was employed as a sworn police officer acting under the color of state law (South Carolina) and was acting within the course and scope of employment as a sworn police officer with the Defendant TOWN OF PORT ROYAL, and all such actions, inactions and/or omissions occurred in the County of Beaufort, South Carolina.

6.    That, at all times as alleged herein, the Defendant JOHN GRIFFITH was employed as a sworn police officer acting under the color of state law (South Carolina) and was acting within the course and scope of employment as a sworn police officer with the Defendant TOWN OF PORT ROYAL, and all such actions, inactions and/or

omissions occurred in the County of Beaufort, South Carolina.

7.    That, the Defendant HOPE HAVEN of the LOWCOUNTRY, INC. was and is a non-profit corporation organized and existing under the laws of the State of South Carolina, with its principal office, registered agent and/or primary operations, and in particular any alleged acts or omissions were conducted in the County of Beaufort, South Carolina.

8.    That, the Defendant, BEAUFORT COUNTY DEPARTMENT OF SOCIAL SERVICES, its officers, agents, staff and/or employees are a political subdivision of the State of South Carolina as defined in the South Carolina Tort Claims Act, Section 15-78-10 *et seq*.  And any and all acts or omissions alleged herein were committed and conducted in the County of Beaufort, State of South Carolina.

9.    That, at all times as alleged herein, the Defendant LATASHA WILLIAMS  was employed  as an agent or officer acting under the color of state law (South Carolina) and was acting within the course and scope of employment as such agent or officer with the Defendant BEAUFORT COUNTY DEPARTMENT OF SOCIAL SERVICES, and all such actions, inactions and/or omissions occurred in the County of Beaufort, South Carolina.

### *GENERAL ALLEGATIONS OF FACT*

10.    That on or about July 10th 2015 (a Friday after 5:00pm)  the Plaintiff was arrested at his residence, situate outside of the Town of Port Royal, but in the County of Beaufort,  by the Defendant's sworn officers and imprisoned on  the crime of Criminal Sexual Conduct 1st Degree With a Minor Under 11 years of Age,  and

3

thereafter was incarcerated, reposed and remained in the Beaufort County Detention Center (Common Jail of Beaufort County).

11. That, on or about July 11ᵗʰ 2015 (a Saturday morning), the Plaintiff, with counsel present, was refused his right to be brought before the "contract" Port Royal municipal judge, and summarily denied a hearing by the Port Royal contract judge. This action by the Port Royal contract Town Judge was contrary to South Carolina statutory law. A criminal defendant, such as the Plaintiff has a statutory and constitutional right, both state and federal, to have a bond/bail *hearing* by a magistrate or city judge on the above referenced charge but, *the judiciary, however, must make specific findings of fact before bond may be denied.* The Plaintiff was refused to be even be seen by the municipal judge acting, by contract, as the judge of the Town of Port Royal. Therefore, the Plaintiff was denied a hearing, nor was there any specific facts whatsoever presented, or allowed to be presented by the Plaintiff, and was denied any hearing by the Port Royal contract judge. The Solicitor's representative acquiesced in, supported and encouraged the Port Royal contract judge's refusal, as is common and routine practice by the Solicitor's office.

12. That, on or about July 13ᵗʰ 2013 (a Monday), the Plaintiff, through counsel, had to file a Writ of Habeas Corpus before the Beaufort County Circuit Court to petition for a bond hearing. The Writ was granted, however, a bond determination was deferred at the insistence of the Solicitor's office, purportedly because the alleged victim's mother was on vacation. The Solicitor's representative insisted a continuance be granted, which was granted by the presiding judge, Hon. Marvin Dukes, III, the

Beaufort County Master-in-Equity with authority to hear bond matters.

13.    That, on or about July 23rd 2015, the Plaintiff was brought before a South Carolina Circuit Judge (Hon. Thomas Cooper) and bond was set at $75,000.00 (10%) and the Plaintiff posted $7,500.00 with the Clerk of the Beaufort County Court and released the next day.  A special condition of bond required the Plaintiff to wear and pay for a G.P.S. monitor at the State's insistence and that the Plaintiff have no contact with minor children, *except his own*.  This monitor and other conditions of bond remained in place until the charge was summarily dismissed for lack of probable cause after a preliminary hearing.

14.    That, on or about August 20th 2015 the charge pursued against the Plaintiff by the Defendants was dismissed on a finding of no probable cause and the Plaintiff was finally freed from his substantial period of incarceration and restrictive conditions of his bond.

15.    That, the arrest of the Plaintiff and numerous follow-up reports were broadcast extensively by the local media, via print, television, the internet, world-wide-web and on-line media releases all of which included jail photographs of the Plaintiff. The allegations and incident details and were broadcast throughout Beaufort, Port Royal, Bluffton, Hilton Head, Ridgeland, Hardeeville, Charleston and surrounding areas of Charleston, South Carolina and in Savannah, Chatham County and Effingham County, Georgia and numerous surrounding communities.

16.    That, the 44 year old Plaintiff was married at this time for fifteen (15) years and had four (4) children ranging from 12 years old to 5 years old and was the sole financial

provider for his family.

17. That, the Plaintiff was employed with United Health Care in a managerial/supervisory capacity. Due to the mere allegations of this nature and his arrest and the attendant media sensation, the Plaintiff was terminated from United Health Care, Medicare & Retirement Division.

18. That, prior to the base allegations made against the Plaintiff, the Plaintiff had no criminal record nor had ever been arrested and enjoyed a very good, solid reputation, as a family man, father, businessman, employee and community volunteer.

19. That, on July 8th 2015, the Plaintiff cooperated with the officers of the Port Royal Police Department, voluntarily gave a video recorded statement during questioning, consented to a polygraph exam and consented to a buccal swab collection for DNA testing twice.

20. That, the officers requested that the Plaintiff submit for a polygraph examination, to which the Plaintiff consented. The Defendant Port Royal officers arbitrarily scheduled a date and time which conflicted with the Plaintiff's previously scheduled appointments.

21. That, Officers Bilyard and Hogue advised the Plaintiff that they would contact him on July 9th 2015 with a mutually convenient day and time for a polygraph test, to which the Plaintiff consented. The officers never called or followed up with the Plaintiff.

22. That, the Port Royal officers were in possession of extensive video evidence from Community Bible Church which conclusively refuted the factual allegations made

6

by the alleged victim's mother.  The officers viewed a portion of the videos and discovered or should have discovered that the complaining witness was lying. Further, the officers failed to interview the other worker in the room and any of the other children or the parents.  All of these failures occurred prior to the officers seeking an arrest warrant for Criminal Sexual Conduct 1st Degree With a Minor Under 11 Years Old.

23.     That, the Defendant JOHN GRIFFITH ordered the Defendant BILYARD to arrest the Plaintiff, despite informing the alleged victim's parents no probable existed at this point.

24.     That, upon the Plaintiff's arrest, on July 10th 2015 the officers informed him that he was being arrested on a warrant they obtained because he did not take a polygraph when he was told to do so by the officers or cooperate further.  Plaintiff was not re-contacted by the officers, with the exception for Defendant Bilyard leaving a message to schedule an appointment for the Plaintiff to bring his children for a Hope Haven interview.

25.     That, a series of search warrants were obtained by the Port Royal Police Department and their officers for the Plaintiff's residence, his cell phone and "any" computers. All eight (8) of the search warrants secured by the Port Royal officers are invalid on their face.

26.     That, the Port Royal officers, Bilyard and other officers, executed the facially invalid search warrants at the Plaintiff's residence well outside of their jurisdiction without the approval, assistance or aid of the county sheriff, state constable or S.L.E.D.

officers. One of the search warrants executed at the Plaintiff's residence was not signed by a judge or judicial officer.

27. That, the Port Royal Police Department, its officers and agents, after numerous demands, have refused to return the Plaintiff's property until December 16th 2015. Nothing of evidentiary value was found on the items. The Port Royal Police Department refuses to return a Windows Tablet belonging to the Plaintiff.

28. That, the alleged victim was age four (4) at the time of the allegation. That, Defendant Hope Haven undertook and accepted the duty to interview the child at the request of the Port Royal Police Department and its Defendant officers. The interview consisted of blatantly leading questions with the answers supplied to the four year old child which contained facts that would have been impossible to have occurred as posed by the examiner.

29. That, no cognitive testing was conducted on the four (4) year old. The manipulated "disclosure," which was inherently implausible to the known evidence (video recordings, witness statements, recantation of the version of events, the known falsehoods of the alleged victim's mother and the type of undergarment worn by the child) were ignored by the "examiner" and the officers of the Port Royal Police Department, all prior to the Plaintiff's arrest.

30. That, the Port Royal Police officers notified the Defendant, SOUTH CAROLINA DEPARTMENT OF SOCIAL SERVICES (DSS) to launch an official inquiry of the Plaintiff and his family.

31. That, the Defendant DSS through their agents, descended unannounced, along with

a foster-care placement representative at the Plaintiff's residence on or about July 13th 2015 and accosted the Plaintiff's wife while the Plaintiff was incarcerated. The Plaintiff's children were briefly interviewed by DSS workers.

32.    That, the DSS agents made it clear to the Plaintiff's wife that if she failed to consent to a "safety plan," the Plaintiff's children would be immediately removed from the home. Further, DSS agents intimidated the Plaintiff's wife with removal of their four children to a foster home if she did not agree to the pre-printed "Safety Plan" form. The pre-printed form states, in part, "If the parent(s) refuse to sign a valid safety plan, an out of home placement must be sought by Law Enforcement or Ex parte Order to keep the child safe, pending the completion of the investigation."

33.    That, the DSS agents failed to give a copy of the safety plan to the Plaintiff or the Plaintiff's wife.

34.    That, the Defendant DSS never conducted any investigation, much less "completed" any investigation, nor re-contacted the Plaintiff, the Plaintiff's wife or children. The safety plan was written to remain in effect for a period of ninety (90) days, and provided that the Plaintiff's children would be removed from the home unless the Plaintiff and his wife complied with the "safety plan." The "safety plan" further provided that criminal contempt sanctions could be imposed upon the Plaintiff's wife, if she did not comply with the "safety plan."

35.    That, the Defendant DSS's safety plan provided for no unsupervised contact by the Plaintiff with his own children which caused onerous restrictions on the Plaintiff and his wife and disrupted the family's normal activities, including, but not expressly

limited to a prepaid scheduled vacation to Sea World and Discovery Cove for their daughter's tenth (10th) birthday.

36.  That, the Defendant DSS failed to investigate or terminate the safety plan even though the conditions of bond set by a South Carolina Circuit Court Judge specifically allowed unsupervised contact with the Plaintiff's own children on July 23rd 2015 and the charge against the Plaintiff was dismissed for want of probable cause on August 20th 2015. The plan remained in effect until at least October 13th 2015. To date DSS has not re-contacted the Plaintiff, his wife or his children, or to the Plaintiff's knowledge ever closed this case against the Plaintiff and his wife.

37.  That, the Defendant DSS, failed to follow state policy by not following-up or modifying or unfounding the safety plan. In the agreement DSS agreed to the following:

> "DSS agrees to complete the investigation in the time as indicated above and to monitor the safety plan for compliance as outlined. DSS agrees to reassess the safety plan if, through investigation, the child's risk of danger is decreased. If the report is unfounded, the Safety Plan will end and the agency will notify both parents and the protector in writing of the termination of the Safety Plan and case decision. If the report is founded, the agency will conduct a family team meeting to develop additional services or alternative plans for the children."

The Defendant DSS failed to do any of the conditions and responsibilities contained in the "Safety Plan" forced upon the Plaintiff's wife.

38.  That, the Defendant DSS's "safety plan" further provided and imposed upon the Plaintiff's wife, "[S]hould these services prove ineffective and it is no longer possible

10

for this child to remain safely within the family home, out-of-home care is the planned arrangement for this child." Immediately following this paragraph, there is a box for YES or NO. The box is checked "YES," indicating to the Plaintiff and his wife that the children would be removed by the state government from the Plaintiff's home. (DSS Form 3087 (SEP 12). This statement threatening the forced removal of the Plaintiff's children was reinforced by the DSS workers to the Plaintiff's wife while the DSS workers were at the Plaintiff's residence.

39.    That, after the case was dismissed for lack of probable cause by a Beaufort County Magistrate on August 20th 2015, the Solicitor and Port Royal Police Department and its Defendant officers were given the DNA analysis by the Beaufort County Sheriff's Office Forensics Services Division on September 30th 2015. The forensic analysis report conclusively stated that no saliva was found on the undergarment or other clothing and no male DNA was present on any of the alleged victim's clothing, save a mixture of male/female DNA on the alleged victim's sweater. The Plaintiff's DNA was conclusively excluded as a contributor to the male/female mixture on the sweater.

40.    That, on or about October 26th 2015 counsel for the Plaintiff discovered that the DNA was negative after discussing the matter with an analyst for the BCSO DNA lab who conducted the examination, and that the results were published to the Defendant Port Royal Department on or about September 30th 2015.

41.    That, on December 2nd 2015 the Plaintiff, through counsel, met with Defendant Bilyard at the Port Royal Police Department headquarters, the meeting was

11

prearranged on November 27th 2015, in order to: 1) Retrieve the Plaintiff's computers; and, (2) to have or retrieve photographs of the alleged victim's clothing.

42.     That, at this meeting, the Plaintiff, through counsel, was told by Bilyard that the case was ended and needed a court order to retrieve the Plaintiff's computers, except for a "Dell" computer, which was returned (the password, however, was changed). Further, the Defendant Bilyard, as previously discussed was going to allow or was going to photograph the packaging and items of the alleged victim's clothing.

43.     That, Bilyard exited and after a brief period returned with Captain John Griffith of the Defendant Port Royal Police Department.  The senior officer of the Defendant Police Department informed the Plaintiff, through counsel, no items could be inspected and the computers could not be returned, save the "Dell."  The Defendant's Captain did agree to have the items of clothing photographed and promised the photographs would be available on or before  December 4th 2015.  To date, the Defendant has failed to comply with its promise of photographs.

44.     That, on December 2nd 2015 Captain Griffith confirmed that the items of clothing were in the possession of the Defendant Port Royal Police Department.  This representation turned out to be false as the items of clothing were reportedly already taken to S.L.E.D. by the chief of police.

45.     That, Captain Griffin stated that the computers could not be returned because, "this case is far from over, we are still investigating it."   The Captain further stated that they were not satisfied with the Beaufort County Forensic Services testing report and that the clothing was to be sent to the South Carolina Law Enforcement Division's

(SLED) lab for further analysis and testing.  This representation turned out to be false as the items of clothing were reportedly already taken to S.L.E.D. by the chief of police.

46.  That, on December 4th 2015, after the photographs of the clothing that was promised to be delivered and were not delivered, the Plaintiff sent via e-mail and USPO the Chief of Police of the Port Royal Police Department a letter requesting that the items of clothing be preserved or photographed as this law suit was imminent and that the items of clothing were crucial to the suit.

47.  That, the Beaufort County Forensic Services Division lab is a state and federally certified and accredited DNA testing/examining facility staffed with state and federally certified and accredited examiners.

48.  That, a SLED captain overseeing the SLED DNA lab confirmed that, as a policy unless there is a DNA lab-to-DNA lab request with specific reasons stated therein, SLED will not re-examine another certified lab's conclusions or analysis.  This information was additionally provided by the Beaufort County Forensic Services Lab confirming that the aforementioned policies were standard operating procedures for their lab and is a standard in the profession.

49.  That, as of December 14th  2015, SLED confirmed that no request for DNA testing/analysis has been submitted in the case involving the Plaintiff or by the Port Royal Police Department.  Further, SLED would not undertake any such request from a local police agency, absent a certified lab's request with reasons explaining that extraordinary circumstances exist,  per SLED's longstanding policy.

13

50.    That, the Plaintiff fears continued prosecution from the Defendant Port Royal Police Department, based upon its assertions that, "the case is far from over," and the false information given by Captain Griffith as to the location of the clothing.

51.    That, on December 15th 2015 a representative officer (Hogue) delivered the Defender Home Security System to the Plaintiff's counsel.  The Port Royal Police Department explained that the remaining computers have not been examined by the Beaufort County Sheriff's Office Computer lab, and were delivered to the B.C.S.O. lab on that date.  Further, the representative stated to Plaintiff's counsel that the Port Royal police Department was "in the process" of obtaining search warrants for the remaining computers and did not know how long the examinations would take.

52.    That, on December 16th 2015 a representative of the Port Royal Police Department delivered the remaining computers to counsel for the Plaintiff explaining that his supervisor made the decision to release the Plaintiff's and his family's computers.

53.    That, the Plaintiff, his wife and children were deprived to their property for a significant time after the termination of his prosecution.  The Plaintiff was without his working computers for a significant of time and lost business and business contacts and income. The Plaintiff's family's privacy was significantly invaded by the grossly inept actions of the Port Royal Police Department, its officers and Robert Bilyard.

### STATE CAUSES OF ACTION

FOR A FIRST STATE CAUSE OF ACTION
(Malicious Prosecution by the Town of Port Royal)

14

54.     That, each and every allegation of fact alleged in paragraphs one (1) through fifty-three (53) are restated and re-alleged herein as if verbatim.

55.     That, the Town of Port Royal and/or The Port Royal Police Department, jointly, severally and in combination thereof,  through its officers, agents or employees initiated and maintained a criminal proceeding against the Plaintiff.

56.     That, the criminal proceeding against the Plaintiff was terminated in his favor.

57.     That, the Defendant, Town of Port Royal and/or The Port Royal Police Department and lacked probable cause to support such criminal proceeding.

58.     That, the Defendant Town of Port Royal and/or The Port Royal Police Department, through its officers, agents and employees acted with common-law malice in initiating and maintaining the criminal process against the Plaintiff.

59.     That, as a direct and proximate result of the wilful, wanton actions and omissions of the Defendant Town of Port Royal through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of his liberty, loss of his employment, loss of income, loss of his reputation, loss of society with his wife and family, incurred attorney fees and legal costs, suffered shame, shock, humiliation, defamation and suffered degradation.  Additionally, the Defendant Port Royal violated the rights secured by Article I, Section 10 of the South Carolina Constitution (1985) by unreasonable violating the Plaintiff's right to privacy.

FOR A SECOND STATE CAUSE OF ACTION
(Gross Negligence by the Town of Port Royal)

15

60.   That, each and every allegation of fact alleged in paragraphs one (1) through fifty-nine (59) are restated and re-alleged herein as if verbatim.

61.   That, the Defendant Town of Port Royal and/or Port Royal Police Department through its officers, agents and employees were negligent, grossly negligent and reckless in the following particulars, to wit:

   a.   By causing the arrest of the Plaintiff without probable cause to do so;

   b.   By turning a blind eye to the plethora of evidence and facts which contradicted the complaining witness' account of the incident;

   c.   By failing to review the video recordings from Community Bible Church which refute the complaining witness' story prior to seeking an arrest warrant;

   d.   By failing to discern that the complaining witness's story was materially false when conclusive evidence was known to and in the possession of the Defendant prior to seeking an arrest warrant;

   e.   By failing to inform the magistrate that the alleged victim recanted her story three times to both her mother and father prior to seeking an arrest warrant;

   f.   By failing to examine the hallways and classroom;

   g.   By failing to interview the parents of the children who were present in the classroom;

   h.   By failing to interview the other children who were present in the classroom;

   i.   By failing to interview the two security personnel who were patrolling the hallways;

16

j.    By failing to investigate the background of the complaining witness;

k.    By failing to interview the alleged victim's father to whom the alleged victim told that she was lying and had made up a story;

l.    By arresting the Plaintiff without any confirmatory evidence solely based upon the recanted statement of a four (4) year old;

m.    By ignoring known clear evidence and facts which did not support probable cause for a warrant;

n.    By failing to exercise any common sense or judgment with respect to the known evidence and facts;

o.    By failing to use due care and caution prior to arresting the Plaintiff;

p.    By violating the Article I, Section 10 of the South Carolina Constitution (1985) by unreasonable violating the Plaintiff's right to privacy;

q.    By executing facially invalid search and arrest warrants;

r.    By violating Article I, Section 15 of the South Carolina Constitution (1895) by failing to grant the Plaintiff a bail hearing;

s.    By failing to use due care and caution under the circumstances; and,

t.    In other ways to be proven at trial.

62.    That, as a direct and proximate result of the negligent, grossly negligent, wilful, wanton actions and omissions of the Defendant Town of Port Royal through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of his liberty, loss of his employment, loss of income, loss of his reputation, loss of society with his wife and family,

incurred attorney fees and legal costs,   suffered shame, shock, humiliation, defamation and suffered degradation.

### FOR A THIRD STATE CAUSE OF ACTION
(Slander *Per Se* by the Town of Port Royal )

63.     That,   each and every allegation of fact alleged in paragraphs one (1) through sixty-two (62) are restated and re-alleged herein as if verbatim.

64.     That, the Defendant Town of Port Royal and/or the Port Royal Police Department, their officers, agents and employees falsely accused and/or caused the Plaintiff to be falsely accused of committing a heinous criminal act.

65.     That, the actions and omissions of the Defendant Town of Port Royal and/or the Port Royal Police Department, their officers, agents and employees were done in careless and reckless disregard of the truth.

66.     That, the Defendant Town of Port Royal and/or the Port Royal Police Department, their officers, agents and employees knew or should have known that the arrest of the Plaintiff is public information available on-line, published in reputable media and un-reputable scandal sheets throughout the community.

67.     That, the arrest and heinous criminal accusations made by the Defendant Town of Port Royal and/or the Port Royal Police Department, their officers, agents and employees against the Plaintiff were in fact published throughout the local community and via the world-wide-web.

68.     That, such heinous false accusations made by the Defendant Town of Port Royal and/or the Port Royal Police Department, their officers, agents and employees against

18

the Plaintiff are indelible and will follow the Plaintiff for the rest of his life.

69.   That, as a direct and proximate result of the negligent, grossly negligent, wilful, wanton actions and omissions of the Defendant Town of Port Royal through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of his employment, loss of income, loss of his reputation, loss of society with his wife and family, incurred attorney fees and legal costs, suffered shame, shock, humiliation, defamation and suffered degradation and inhumane treatment as a citizen. Additionally, the Defendant Port Royal violated the rights secured by Article I, Section 10 of the South Carolina Constitution (1985) by unreasonably violating the Plaintiff's right to privacy.

### FOR A FOURTH STATE CAUSE OF ACTION
(Trespass to Personal Property by the Town of Port Royal)

70.   That, each and every allegation of fact alleged in paragraphs one (1) through sixty-nine (69) are restated and re-alleged herein as if verbatim.

71.   That, between July 10th 2015 and December 16th 2015, the Defendant Town of Port Royal unlawfully seized a number of computers and electronic devices from the Plaintiff to include: an I-Phone, home security system, five laptop computers, an I-Pad, Windows Tablet and a United Health Care computer assigned and entrusted to the Plaintiff.

72.   That, the Plaintiff made numerous demands on the Defendant to return these items, verbally and in writing after the false criminal charge against the Plaintiff was dismissed for lack of probable cause on August 20th 2015.

73.  That, on various dates, the items were finally returned, save and except for a Windows Tablet, which the Defendant has refused to return.

74.  That, the unlawfully seized items contained business records, his client's personal information and contacts, as well a personal private information.

75.  That, as a direct and proximate result of the negligent, grossly negligent, wilful, wanton actions and omissions of the Defendant Town of Port Royal through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including, but not limited to:  loss of his employment, loss of income, incurred attorney fees and legal costs, suffered shame, shock, humiliation, defamation and suffered degradation and inhumane treatment as a citizen.  Additionally, the Defendant Port Royal violated the rights secured by Article I, Section 10 of the South Carolina Constitution (1985) by unreasonable violating the Plaintiff's right to privacy.

FOR A FIFTH STATE CAUSE OF ACTION
(Violation of State Civil Rights by the Town of Port Royal)

76.  That,  each and every allegation of fact alleged in paragraphs one (1) through seventy-five (75) are restated and re-alleged herein as if verbatim.

77.  That, Article I, Section 23 of the South Carolina Constitution states that the rights of citizens granted in Article I, "shall be taken, deemed, and construed to be mandatory and prohibitory. . .."

78.  That, the Defendant, Town of Port Royal and its officers, deprived the Plaintiff of civil rights guaranteed by the South Carolina Constitution in the following ways:

a.     By exceeding their authority granted to police officers;

b.     By violating the Plaintiff's right to be free from unreasonable arrest granted and secured by Article I, Section 10 of the South Carolina Constitution;

c.     By executing a search warrant unsigned by a judge or judicial officer;

d.     By violating the Plaintiff's right to be free from unreasonable invasions of privacy granted and secured by Article I, Section 10 of the South Carolina Constitution;

e.     By denying the Plaintiff from a timely bond hearing as granted and secured by Article I, Section 15 of the South Carolina Constitution;

f.     By denying the Plaintiff due process of law as granted and secured by Article I, Section 3 of the South Carolina Constitution; and

g.     In other ways to be proven at trial.

79.     That, as a direct and proximate result of the negligent, grossly negligent, wilful, wanton actions and omissions of the Defendant Town of Port Royal through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of liberty, loss of his employment, loss of income, incurred attorney fees and legal costs, suffered shame, shock, humiliation, defamation and suffered degradation and inhumane treatment as a citizen.

FOR A SIXTH STATE CAUSE OF ACTION
(Gross Negligence by Beaufort County DSS)

80.    That, each and every allegation of fact alleged in paragraphs one (1) through seventy-nine (79) are restated and re-alleged herein as if verbatim.

81.    That, the Defendant Beaufort County Department of Social Services through its officers, agents and employees were negligent, grossly negligent and reckless in the following particulars, to wit:

    a.    By failing to conduct any investigation prior to restricting the Plaintiff's access to and society of the Plaintiff's children;

    b.    By failing to conduct any subsequent investigation;

    c.    By failing to amend the safety plan after a circuit court judge's order allowed unfettered access by the Plaintiff to his children;

    d.    By failing to amend or withdraw the safety plan after the Plaintiff's criminal case was dismissed for lack of probable cause;

    e.    By failing to ever contact or interview the Plaintiff whatsoever;

    f.    By failing to abide by the safety plan's agreements;

    g.    By restricting the Plaintiff from unsupervised contact with his children without cause;

    h.    By unreasonably disrupting the Plaintiff's family life without just cause;

    i.    By failing to follow-up or investigate in any manner whatsoever;

    j.    By failing to make any sort of finding in the Plaintiff's case;

    k.    By failing to terminate the safety plan without cause or reason;

    l.    By unreasonable invading the Plaintiff's family life and privacy;

    m.    By failing to use due care and caution in initiating, revising, unfounding or

terminating the safety plan;

n.    By failing to provide a copy of the "safety plan" to the Plaintiff or his wife;

o.    By violating the Article I, Section 10 of the South Carolina Constitution (1985) by unreasonable violating the Plaintiff's right to privacy;

p.    By failing to use due care and caution required under the circumstances; and,

q.    In other ways to be proven at trial.

82.    That, as a direct and proximate result of the negligent, grossly negligent, wilful, wanton actions and omissions of the Defendant Beaufort County Department of Social Services through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of his liberty interests, loss of his reputation, loss of society with his wife and family, unreasonable invasion of privacy, incurred attorney fees and legal costs, suffered shame, shock, humiliation, defamation and suffered degradation.  Additionally, the Defendant Beaufort County Department of Social Services  violated the rights secured by Article I, Section 10 of the South Carolina Constitution (1985) by unreasonable violating the Plaintiff's right to privacy.

FOR A SEVENTH STATE CAUSE OF ACTION
(Violation of State Civil Rights by Beaufort Co. DSS)

83.    That,  each and every allegation of fact alleged in paragraphs one (1) through eighty-two (82) are restated and re-alleged herein as if verbatim.

84.    That, Article I, Section 23 of the South Carolina Constitution states that the rights of citizens granted in Article I, "shall be taken, deemed, and construed to be mandatory

and prohibitory. . ..."

85.    That, the Defendant, Beaufort County Department of Social Services and its officers, deprived the Plaintiff of civil rights guaranteed by the South Carolina Constitution in the following ways:

a.    By exceeding the authority granted to DSS agents;

b.    By violating the Plaintiff's right to be free from unreasonable invasions of privacy granted and secured by Article I, Section 10 of the South Carolina Constitution;

c.    By denying the Plaintiff due process of law as granted and secured by Article I, Section 3 of the South Carolina Constitution; and

d.    In other ways to be proven at trial.

86.    That, as a direct and proximate result of the negligent, grossly negligent, wilful, wanton actions and omissions of the Defendant Town of Port Royal through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of liberty interests, loss of privacy, loss of society with his family, incurred attorney fees and legal costs, suffered shame, shock, humiliation, and suffered degradation and inhumane treatment as a citizen.

FOR A EIGHTH STATE CAUSE OF ACTION
(Gross Negligence by Hope Haven)

87.    That, each and every allegation of fact alleged in paragraphs one (1) through eighty-six (86) are restated and re-alleged herein as if verbatim.

88.    That, the Defendant Hope Haven through its officers, agents and employees were

24

negligent, grossly negligent and reckless in the following particulars, to wit:

   a.    By failing to gather necessary background information prior to conducting forensic interviews in this case;

   b.    By failing to ascertain factual background information as to the assault alleged in this case;

   c.    By failing to do any cognitive testing or assessment on the alleged four year old victim in this case;

   d.    By asking suggestive and leading questions to elicit desired responses by the examiner;

   e.    By pitting her mother's statement against the child's answers;

   f.    By failing to train its examiners;

   g.    By inserting and implanting false facts during the forensic interview in order to have the child agree with such false facts;

   h.    By failing to follow-up and attempt to verify the child's supposed disclosure;

   i.    By giving opinions to law enforcement as to the child's veracity;

   j.    By failing to use the degree and skill which practitioners in the profession would adhere to and use;

   k.    By failing to use due care and caution under the circumstances; and,

   l.    In other ways to be proven at trial.

89.    That, as a direct and proximate result of the negligent, grossly negligent, wilful, wanton actions and omissions of the Defendant Hope Haven through its officers, agents and employees, the Plaintiff suffered and will continue to suffer damages,

including, but not limited to: loss of his liberty, loss of his employment, loss of income, incurred attorney fees and legal costs, loss of his reputation, loss of society with his wife and family, suffered shame, shock, humiliation, defamation and suffered degradation.

## FEDERAL CAUSES OF ACTION

### AS AND FOR A NINTH CAUSE OF ACTION
(Civil Rights Violations 42 U.S.C. §1983, §1988)
(Asserted Against Robert Bilyard)

90.    That, each and every allegation of fact alleged in paragraphs one (1) through eighty-nine (89) are restated and re-alleged herein as if verbatim.

91.    That, the Defendant Robert Bilyard is a sworn police officer and was acting at all times under the color of state laws of South Carolina.

92.    That, the Defendant, Robert Bilyard deprived the Plaintiff of federally protected rights provided for in the United States Constitution in the following particulars:

   a.    By violating the Plaintiff's Fourth Amendment and Fourteenth Amendment rights to be free from unreasonable seizure and incarceration by state actors.

   b.    By violating the Plaintiff's Fourth Amendment and Fourteenth Amendment rights by securing a facially invalid warrant of arrest, searching and seizing the Plaintiff's property;

   c.    By depriving the Plaintiff Fifth and Fourteenth Amendment rights to due process of law in failing to conduct a reasonable investigation which led to his seizure;

26

      d.     By securing and executing facially invalid search warrants for the Plaintiff's home and property multiple times in contravention of the Fourth and Fourteenth Amendments;

      e.     By depriving the Plaintiff of his property in violation of the Fourth, Fifth and Fourteenth Amendments;

      f.     By unreasonably invading the Plaintiff's privacy and disrupting his family life, rights protected by the penumbras of the Fourth Amendment.

93.    That, as a direct and proximate result of the deprivations of rights afforded under the United States Constitution by the Defendant Bilyard,  the Plaintiff suffered and will continue to suffer damages, including, but not limited to:  loss of liberty,  loss of his employment, loss of income, loss of his reputation, loss of society with his wife and family, incurred attorney fees and legal costs, suffered shame, shock, humiliation, defamation and suffered degradation and inhumane treatment as a citizen and person subject to the jurisdiction of the United States.

AS AND FOR A TENTH CAUSE OF ACTION
(Civil  Rights Violations 42 U.S.C. §1983, §1988)
(Asserted Against John Griffith)

94.    That, each and every allegation of fact alleged in paragraphs one (1) through ninety-three (93) are restated and re-alleged herein as if verbatim.

95.    That, the Defendant John Griffith is a sworn police officer and was acting at all times under the color of state laws of South Carolina.

96.    That, the Defendant, John Griffith deprived the Plaintiff of federally protected rights provided for in the United States Constitution in the following particulars:

a.    By violating the Plaintiff's Fourth Amendment and Fourteenth Amendment rights to be free from unreasonable seizure and incarceration by state actors.

b.    By violating the Plaintiff's Fourth Amendment and Fourteenth Amendment rights by ordering a subordinate office (Bilyard) to secure a facially invalid warrant of arrest, searching and seizing the Plaintiff's property;

c.    By depriving the Plaintiff Fifth and Fourteenth Amendment rights to due process of law in failing to conduct a reasonable investigation which led to his seizure;

d.    By ordering a subordinate officer to secure and execute facially invalid search warrants for the Plaintiff's home and property multiple times in contravention of the Fourth and Fourteenth Amendments;

e.    By depriving the Plaintiff of his property in violation of the Fourth, Fifth and Fourteenth Amendments;

f.    By unreasonably invading the Plaintiff's privacy and disrupting his family life, rights protected by the penumbras of the Fourth Amendment.

97.    That, as a direct and proximate result of the deprivations of rights afforded under the United States Constitution by the Defendant Bilyard,  the Plaintiff suffered and will continue to suffer damages, including, but not limited to:  loss of liberty,  loss of his employment, loss of income, loss of his reputation, loss of society with his wife and family, incurred attorney fees and legal costs, suffered shame, shock, humiliation, defamation and suffered degradation and inhumane treatment as a citizen and person subject to the jurisdiction of the United States.

### AS AND FOR A ELEVENTH CAUSE OF ACTION
(Civil Rights Violations 42 U.S.C. §1983, §1988)
(Asserted Against the Town of Port Royal)

98.    That, each and every allegation of fact alleged in paragraphs one (1) through ninety-seven (97) are restated and re-alleged herein as if verbatim.

99.    That, the Defendant Town of Port Royal is a municipality situate in the State of South Carolina, acting under the color of South Carolina State law and is a person as defined by *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

100.    That, the Defendant violated the Plaintiff's Eighth, Fifth and Fourteenth Amendment rights in the following particulars:

a.    By adopting a policy, custom, practice or procedure that denies citizens, such as the Plaintiff, their due process rights to have a hearing, post arrest for bail;

b.    By denying the Plaintiff a right to a bail hearing;

c.    By continuing to imprison the Plaintiff without any due process rights or right to bail or even right to a hearing on the matter of bail; and,

d.    In other ways to be proven at trial.

101.    That, as a direct and proximate result of the deprivations of rights afforded under the United States Constitution by the Defendant Town of Port Royal, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of liberty, loss of his employment, loss of income, incurred attorney fees and legal costs, loss of his reputation, loss of society with his wife and family, suffered shame, shock, humiliation, defamation and suffered degradation and inhumane treatment as a citizen and person subject to the jurisdiction of the United States.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (Civil Rights Violations 42 U.S.C. §1983, §1988)
### (Asserted Against Latasha Williams)

102. That, each and every allegation of fact alleged in paragraphs one (1) through one hundred and one (101)are restated and re-alleged herein as if verbatim.

103. That, the Defendant Latasha Williams is an agent or official of the Beaufort County Department of Social Services and was acting at all times under the color of state laws of South Carolina.

104. That, the Defendant, Latasha Williams deprived the Plaintiff of federally protected rights provided for in the United States Constitution in the following particulars:

   a. By violating the Plaintiff's federally protected rights under the Fourth and Fourteenth Amendments by unreasonably invading his federally protected interests in his family, home and hearth;

   b. By violating his Fifth and Fourteenth Amendment rights to due process of law;

   c. By imposing restrictive conditions on his family relationships in violation of the Fourth, Fifth and Fourteenth Amendments to the United States Constitution.

105. That, as a direct and proximate result of the deprivations of rights afforded under the United States Constitution by the Defendant Latasha Williams, the Plaintiff suffered and will continue to suffer damages, including, but not limited to: loss of liberty interests, loss of society with his wife and family, suffered an unreasonable invasion into his privacy, incurred attorney fees and legal costs, suffered shame, shock,

humiliation, defamation and suffered degradation and inhumane treatment as a

citizen and person subject to the jurisdiction of the United States.

WHEREFORE, the Plaintiff prays that this Honorable Court assess and award damages, in

a just amount  for full and complete compensory damages and costs on the state causes of action as

determined by a duly constituted jury, together with punitive damages, costs and attorneys fees on

the federal causes of action, as determined by a duly constituted jury, and for such other and further

relief as the Court and justice will allow.  A trial by jury is constitutionally demanded pursuant to

the Seventh and Fourteenth Amendments to the United States Constitution and Article I, Section 14

of the South Carolina Constitution (1895 as Amended).

Respectfully Submitted,

_S/Jared Sullivan Newman_

Jared Sullivan Newman
Post Office Box 515
1508 Paris Avenue
Port Royal, South Carolina 29935
S.C. Bar Id. No.:  0012930
Fed. Id. No.:   05584
(843) 522-1313 Fax: (843) 522-0412
E/M: jnewman@jnewmanlaw.com
Attorney for the Plaintiff

Port Royal, South Carolina

August 18, 2016.

31